### DACEY v. TRUST FUNDS, Inc.
#### Civ. No. 4952.

District Court, D. Massachusetts.
Aug. 11, 1947.

Frederick W. Roche, of Boston, Mass., for plaintiff.

Thomas H. Ray and William Shaw Mc-Callum, both of Boston, Mass., for defendant.

SWEENEY, District Judge.

This case has been heard for the second time as a result of the mandate from the Circuit Court of Appeals under date of March 7, 1947, 1 Cir., 160 F.2d 413. At the original hearing this Court found in favor of the plaintiff. (66 F.Supp. 321)

The basis for the action is that the plaintiff, Dacey, is seeking reinstatement in his former employment with the defendant under the provisions of the Selective Training and Service Act of 1940, § 8, as amended, 50 U.S.C.A.Appendix, § 308.

### Findings of Fact

In 1938 the plaintiff, Dacey, D. A. Griffith, and H. B. Paquet formed "Trust Funds, Inc." The corporate name was later changed to "Trusteed Funds, Inc." The company promoted an investment plan designed to sell securities to investors of modest means. Dacey is a salesman of more than ordinary ability, and he had worked for various other investment houses prior to his connection with Trusteed Funds. He signed a five-year contract in 1938 as Publicity Director. The contract also provided that he was to perform such other duties as the company should assign. Dacey shared in a special fund set up for the compensation of himself and the other executives, Griffith and Paquet.

Between 1938 and 1941, he supervised the advertising and publicity program. He prepared advertisements for newspapers and other media, and edited brochures explaining the company's plan to prospective investors. Some time in 1941, the corporation registered with the Securities and Exchange Commission under the Investment Company Act of 1940, 15 U.S.C.A. § 80a—1 et seq. The registration sharply curtailed the publicity program, and thereafter Dacey devoted his time to the training, recruiting, and supervision of salesmen, and continued to take a prominent part in the management of the company as vice president and director. The contract of employment did not limit him to the job of Publicity Director although at the outset that was his principal activity. He assisted Paquet in the sales program and sold the plan himself to investors from 1938 until he entered the service in 1942. I find as a fact that the suspension of his duties as Publicity Director did not make his position with the company superfluous, but that he was assigned to other duties in accordance with his contract.

The company has refused to reinstate Dacey on the ground that he lacks the qualifications for a post of managerial responsibility. It has introduced evidence of specific conduct, both prior and subsequent to his military service, to prove that Dacey was a disruptive element in the company, and that he was temperamentally unfit to work harmoniously and smoothly with the officers, and others, for the best interests of the firm.

As part of its investment plan, Trusteed Funds had contracts with the National Rockland Bank of Boston, the John Hancock Life Insurance Company, and Studley, Shupert & Company, investment counselors. Dacey attempted to use the names of these firms in the advertising program, apparently as an inducement to investors. The companies objected to the tenor of the advertisements, and threatened to withdraw their connection with the defendant. The dispute occurred in the early days of the company's existence, and was resolved prior to Dacey's departure for the army. He had other disputes with the insurance company and with Studley Shupert, but they were no more than the business differences incidental to the management of

a company intimately associated with three other large and important companies, whose interests were not always identical with those of the defendant.

This evidence and other incidents of a trivial and meaningless character do not show that Dacey lacked the temperament for business success but, on the contrary, reveal him as an aggressive, forceful executive occasionally showing more vigor than tact, but always promoting the interests of the firm. It is undeniable that he was an important element in the success of the company. He did not always agree with the other officers but they worked together for four years, on a first-name basis. When Dacey entered the service, the company tendered him a dinner and presented him with a gift while his associates lauded his ability. Griffith and Paquet corresponded with him while he was overseas, on friendly terms. On this evidence alone it is impossible to conclude that Dacey was not fitted for his job. I find as a fact that Dacey was able to discharge the duties of the position for which he was applying. However, ability alone is not enough. The wording of the statute is "still qualified". It has been indicated that beyond mere ability to perform the job there must be the willingness and desire to work in harmony with associates.

The Circuit Court of Appeals in its opinion, 1 Cir., 160 F.2d 413, 421, adopted the conclusion of Judge Chesnut in McClayton v. W. B. Cassell Co., D.C., 66 F.Supp. 165, 170, that "the position of a managerial officer of a corporation requires mental and temperamental elements consistent with harmonious relations and mutual trust and confidence on the part of the several managers who must work together". Viewing Dacey's conduct after his return from the service in the light of this conclusion, this Court is compelled to find that it would be unreasonable to require the defendant to reinstate the plaintiff in his former position. When Dacey returned from overseas in 1945 Griffith refused to reemploy him. Dacey then approached several officers and directors of the company and told them that the firm was "in dire straits", and that the Securities and Exchange Commission was about to descend upon the company and Griffith. He tried to persuade the other officers and directors, as well as some stockholders, to oust Griffith and to reorganize the company with Dacey himself as vice president. So far as the evidence is concerned, there was no foundation for the stories which he told. Undoubtedly Dacey was incensed at Griffith for his failure to reemploy him. However, his attempt to unseat Griffith is hardly consistent with the harmonious relations and mutual trust and confidence mentioned in the McClayton case, supra.

### Conclusions of Law

In view of the above findings, I am compelled to conclude that it would be unreasonable to require the defendant to reinstate the plaintiff, in view of his hostility to the officers and directors of the company, and his inability to work with them in a relationship of trust and confidence.

The action is to be dismissed.