Walter L. LARSEN, Jr., Plaintiff,

v.

AIR CALIFORNIA, Defendant.

Civ. No. 69–944.

United States District Court,
C. D. California.

May 12, 1970.

Walter L. Larsen, Jr., in pro. per.

Brownell Merrell, Jr., and J. Randolph Huston, Gates, Morris, Merrell & Stephens, Los Angeles, Cal., for defendant Air California.

DECISION, FINDINGS OF FACT, AND CONCLUSIONS OF LAW

HAUK, District Judge.

### DECISION

**I**

This action proceeded to trial on February 17, 1970 on Plaintiff's First Amended Complaint in which the Plaintiff alleged that the Defendant, his prior employer, had violated the provisions of 50 U.S.C. App. § 459(g) (4) of the Selective Service Act of 1967. The Plaintiff seeks reemployment and reimbursement of back wages from the date of his discharge by Defendant. Jurisdiction in the case is based upon 50 U.S.C. App. § 459(d) and 28 U.S.C. § 1331 relating to the disposition of federal questions.

**II**

The Defendant herein is a regularly scheduled commercial airline transporting passengers within the State of California. Plaintiff was first employed by the Defendant in September 1967 as a co-pilot. For reasons unrelated to the case at bar, he was furloughed by the Defendant in November 1967 and recalled to work in March 1968. On June 4, 1968, Defendant notified the Plaintiff that he had been discharged with his termination to be effective on June 20, 1968.

Plaintiff's original Complaint in this action was filed on May 15, 1969, approximately one year after the Plaintiff had been discharged by the Defendant. This original Complaint contained claims for relief based on (a) Defamation; (b) Breach of Contract; (c) Sections 394 and 394.5 of the California Military and Veterans Code; (d) 42 U.S.C. § 1985; (e) 50 U.S.C. App. § 459(c) (3); and (f) 50 U.S.C. App. § 459(g) (4). All but the last of the foregoing bases of liability were dismissed by the Court as failing to constitute claims upon which relief could be granted and the action proceeded to trial upon the sole question of whether the Defendant had violated the provisions of Section 459(g) (4) of the Selective Service Act of 1967.

**III**

During the period of his employment with Defendant, the Plaintiff was actively engaged in reserve training as an officer in United States Coast Guard Reserve. He had completed an extended tour of active duty with the Coast Guard in 1962 and has since continued his military training on a voluntary basis. His Reserve duties required him to attend at least one weekend of training drills per month. Plaintiff's First Amended Complaint alleges that the Defendant denied him leaves of absence for attendance at his Reserve drills for the months of April and May, 1968, and that the Defendant did not properly restore him to his job after granting him a leave of absence for drills conducted on June 1 and 2 of 1968, all in violation of Section 459(g) (4) of the Selective Service Act of 1967. This statute reads, in pertinent part, as follows:

> "Any employee * * * shall upon request be granted a leave of absence by his employer for the period required to perform active duty for training or inactive duty training in the Armed Forces of the United States. Upon his release from a period of such active duty for training or inactive duty training * * * such employee shall be permitted to return to his position with such seniority, status, pay, and vacation as he would have had if he had not been absent for such purposes."

The Plaintiff's allegations as to the April and May Reserve drills are without merit.[1] Plaintiff's testimony at the trial suggests that the "little scraps of paper" on which he had written his drill dates for April and May and had given to the Defendant's Chief Dispatch-

---

1. The evidence disclosed that the Plaintiff actually attended both of his scheduled drills dates in April, 1968 and missed one day of drills in May 1968.

er were not considered by the Plaintiff at the time to be requests for leave of absence from his employment duties nor could the Defendant reasonably have viewed them as such. The Plaintiff testified that in early May, 1968, he first decided to request leaves of absence from the Defendant and told the Defendant's President of this intention at a meeting with him on May 3, 1968. In addition, the testimony of both the Defendant's management personnel and that of the Plaintiff himself indicated that the Plaintiff was at all times aware of potential conflicts between his Reserve duties and his employment with an airline that carried the bulk of its passenger traffic on its weekend flights, and was afforded an opportunity to accommodate his drill schedule to his employment schedule. Plaintiff's testimony also revealed that he had missed only two days of Reserve drills during his employment with Defendant and that he had been able to make up at least one of these drills at a later date. It was not until May 1968 that Plaintiff submitted a formal request for a leave of absence for his Reserve drills on June 1 and 2 and this request was granted by the Defendant.

The Plaintiff's case thus revolves around the circumstances surrounding his return to work after attending the drills on June 1 and June 2, 1968. The Plaintiff's Complaint admits that he returned to the service of Air California on June 3, 1968 and the records of the Defendant indicate that he participated in routine flight duties on that date. It was on June 4, 1968, as a cumulative result of various reports received by Defendant's management revealing substandard performance by the Plaintiff, that the Defendant's Chief Pilot terminated the Plaintiff effective June 20, 1968.

 There was substantial evidence presented at the trial to support the conclusion that the Plaintiff's discharge was effected in good faith and without reference to his Reserve train-

ing obligations. The evidence in this respect reflected adversely on the Plaintiff's technical ability, his ability to respond to criticism and instruction, and revealed a general demeanor marked by observable personality traits incompatible with flight-crew duty. Numerous written reports from other employees of the Defendant were introduced which indicated a generally deficient performance by Plaintiff in the discharge of his duties. Two witnesses at the trial testified that the Defendant had on one occasion fallen asleep or "dozed" while at the controls of an Air California passenger flight. None of the testimony or other evidence submitted supports the Plaintiff's contention that this evidence was amassed as a subterfuge to justify Plaintiff's termination and to deny him his rights under the Selective Service Act of 1967. In the face of such overriding evidence, Section 459(g) (4) can hardly be interpreted as entitling one to a life-time job. The scheme of Federal reemployment rights statutes does not require a court to disregard those aspects of the basic employment relationship which would make continued or renewed employment unreasonable. Green v. Tho-Ro Products, Inc., 232 F.2d 172 (3rd Cir. 1956); Dacey v. Trust Funds, Inc., 72 F.Supp. 611 (D.C.Mass.1947).

This conclusion is buttressed by evidence revealing that the Plaintiff had intentionally omitted from his August 8, 1967 employment application with Defendant reference to two prior employers, one of which had discharged the Plaintiff after five weeks of employment. In fact, Plaintiff's employment record with his prior employers reveals a continuing pattern of difficulties and deficiencies similar, if not identical, to those which arose during the Plaintiff's employment by Air California. In view of the foregoing and in view of the substantial reasons existing for the Plaintiff's discharge, it would be unreasonable and inequitable to require the Defendant to restore the Plaintiff to his position of employment.

## IV

On April 27, 1968, some five weeks prior to Plaintiff's discharge, the Defendant instituted by means of a letter sent to all of its employees a Discipline and Discharge Hearing Program. Although the Plaintiff did receive a copy of the Discipline and Discharge Hearing Program, the Defendant contended at the trial that the Program had not been intended to apply to the company's crew-member employees who had at that time already participated in the election of a collective bargaining agent. The Defendant also contended that the Discharge Program was not intended to apply to probationary employees and that it considered the probationary period for its flight-crew employees to be one year, which was generally accepted in the industry. Such an intention, however, was not explicit either in the Program itself or in the cover letter which was distributed with it. Nor was there any indication that the Program was subsequently revoked as to Defendant's crew-member employees. The institution of this Program and its distribution to the various employees of the Defendant created a contractual relaionship between the employer and its employees and, until revoked, could be justifiably relied upon by its recipients.

The Plaintiff made timely application for a hearing under the Program by submitting a grievance letter to the Defendant on June 10, 1968. The Defendant refused a hearing to the Plaintiff on the grounds that the Discipline and Discharge Hearing Program did not apply to flight-crew members such as the Plaintiff. This denial was in violation of Section 459(g) (4) of the Selective Service Act of 1967 insofar as that section requires an employer to return a veteran who has been engaged in reserve activities to his position of employment with the same "status" which

he enjoyed prior to his training period. Accordingly, although Defendant's discharge of the Plaintiff was warranted and supported by good cause and although there is no evidence to suggest that such a hearing would have resulted in reinstatement, the company's refusal to grant him a hearing under the Discipline and Discharge Hearing Program was both a reduction in the "status" of his position and a breach of their implied contractual obligation to the Plaintiff which had arisen with the dissemination of the Program.

## V

In view of these facts, the Plaintiff is entitled to be compensated for lost wages between the final date on which the Plaintiff was informed by the Defendant company that it would not grant him a discharge hearing, June 17, 1968, and the day on which such a hearing, if it had been conducted, would have concluded.[2] Such a period amounts to 94 days and accordingly the Plaintiff, who was then receiving a salary of $750.00 per month, is entitled to damages in the amount of $2,250.00.

Evidence was introduced at the trial concerning the Plaintiff's activity after his discharge by Defendant. From the date of his discharge in June of 1968 to the date of the trial herein, which commenced on February 17, 1970, Plaintiff received no income from employment whatsoever other than the military pay which he received for his attendance at Coast Guard Reserve drills. Although the Plaintiff testified that he had engaged in "invention development" at his place of residence, this work had generated no income for the Plaintiff and Plaintiff's own testimony conceded that the substantial portion of his time had gone into the preparation for and prosecution of this action against the Defendant. There was likewise insufficient

2. The Discharge Hearing procedure contained maximum time limits for the various stages of the hearing. These periods totaled 34 days. The final written decision in such matters is required to be made "as soon as practicable" and the Court is of the opinion that would reasonably have been 60 days. The total period is thus deemed to be 94 days.

evidence upon which to conclude that the Plaintiff had sought other employment with sufficient diligence to conclude that he had adequately attempted to mitigate any damages resulting from his discharge.

As an alternative finding to support the award of damages in the amount of $2,250.00 to Plaintiff, the Plaintiff may be entitled to the sum of $750.00 per month for the period from the date of his discharge until January 30, 1969, the date on which Plaintiff was informed by the United States Attorney's office that it had reviewed his case against Defendant and concluded that its merits did not warrant their representation, such representation being discretionary under Section 459(d) of the Selective Service Act. After a review of the Plaintiff's complete employment history and the various salaries which he had received, it is this Court's opinion that the Plaintiff would have received a minimum salary of $450.00 had he successfully mitigated his damages. Subtracting this sum from $750.00 per month for the aforementioned period of time, one arrives at the net figure of $300.00 per month or a total of $2,250.00.

In accordance with the foregoing, which shall also constitute findings of fact and conclusions of law, the Court now makes its formal Findings of Fact and Conclusions of Law.

## FINDINGS OF FACT

1. The Plaintiff entered into the employ of Defendant on September 16, 1967 and thereafter adequately completed the training program of Defendant, Air California.

2. Defendant is a commercial airline specializing in commuter service between northern and southern California and whose heaviest passenger traffic occurs on weekends.

3. In September 1967, prior to the commencement of Plaintiff's duties with Defendant, Plaintiff and members of Defendant's management conducted a "pre-employment interview". At this meeting, Plaintiff informed Defendant for the first time of his Coast Guard Reserve training obligations and the Plaintiff himself suggested that he might "trip-trade" his assigned crew-duty obligations with other of Defendant's co-pilots in order to accommodate his drill schedule with that of the airline's flight schedule.

4. Plaintiff was at all times afforded an opportunity to "trip-trade" in order to meet his reserve duties.

5. During the course of Plaintiff's employ with Defendant, Air California had at least two other crew-member employees active in reserve training programs who successfully employed "trip-trading" as a means of accommodating both their employment and their military obligations.

6. Plaintiff submitted to Defendant's management a formal written request for leave of absence from employment duties on June 1 and June 2, 1968.

7. Defendant granted Plaintiff's request for leave of absence on June 1 and 2, 1968, and Plaintiff engaged in military reserve training on these dates.

8. Plaintiff returned to the employ of Defendant on June 3, 1968 and engaged in normal employment duties.

9. Prior to Plaintiff's discharge, oral and written reports were submitted to Defendant's management reflecting negatively upon the quality of the Plaintiff's performance for Defendant.

10. On an Air California passenger flight in April of 1968, Plaintiff was "dozing" or "sleeping" while at the controls of an Air California passenger flight.

11. Defendant's management received oral and written communications from its other employees concerning the fact that Plaintiff's attitude and personality created a disturbing effect upon his fellow crew-members on and off the flight deck.

12. During his employ with Defendant, Plaintiff did not respond constructively to criticism and instruction of-

fered with respect to his technical competence.

13. Plaintiff, in his August 8, 1967 application for employment with Defendant, failed to answer completely a question regarding past employment and, in fact, intentionally deleted reference to his past employment with two commercial airlines, one of which had discharged Plaintiff after five weeks of employment.

14. On or about April 27, 1968, the Defendant instituted a Discipline and Discharge Hearing Program and mailed a copy of this Program to the Plaintiff.

15. On June 4, 1968, Defendant gave Plaintiff written notice of his termination which was to be effective June 20, 1968.

16. On June 10, 1968, the Plaintiff submitted a timely "grievance letter" to Defendant, thus attempting to initiate the discharge hearing procedure set forth in the Air California Discipline and Discharge Hearing Program.

17. On June 17, 1968, Defendant gave Plaintiff formal notice that he would not be granted a discharge hearing pursuant to the company's Program.

18. The difficulties which the Plaintiff realized while in the employ of the Defendant are similar to problems which the Plaintiff encountered with his prior employers.

19. Plaintiff would not have been employed by Defendant if Defendant had known about Plaintiff's past employment which Plaintiff had omitted from his employment application.

20. The Plaintiff was terminated by Defendant in good faith and for cause.

21. At the time of his discharge by Defendant, Plaintiff was earning the sum of $750 per month.

22. Subsequent to his discharge by Defendant, Plaintiff has retained no income producing employment and failed to diligently seek out such employment.

## CONCLUSIONS OF LAW

1. The Court has jurisdiction in this matter and the parties hereto by reason of Section 9(d) of the Military Selective Service Act of 1967; 50 U.S.C.App. § 459(d) and 28 U.S.C. § 1331 relating to the disposition of Federal questions.

2. The notes given by the Plaintiff to Defendant's Chief Dispatcher concerning his April and May Reserve drills did not constitute requests for leave of absence within the meaning of 50 U.S.C. § 459(g) (4).

3. The Plaintiff justifiably relied upon the promulgation and distribution to him of Defendant's Discipline and Discharge Hearing Program and was thus entitled to the process and procedures contained therein.

4. Section 459(g) (4) of the Selective Service Act of 1967 requires that employers, having granted leaves of absence to reservist employees, return such employees after their training to their positions with the same "status" as the reservist enjoyed prior to engaging in the military drill.

5. Defendant's failure to grant Plaintiff a hearing under its Discipline and Discharge Hearing Program was a denial of such "status" as was contemplated by the statute.

6. Plaintiff's intentional failure to list all prior employers on his application for employment with Defendant constituted a constructive fraud and it would be contrary to the basic principles of equity to require the Defendant to reemploy the Plaintiff.

7. Section 459(c) (3) of the Selective Service Act of 1967, having been enacted after the controversy in question occurred and not having been made retroactive in effect, is not applicable to the case at bar.

8. The promulgation and distribution to Plaintiff of Defendant's Discipline and Discharge Hearing Program creates a contractual relationship between the Defendant employer and his employee such as to justify Plaintiff's reliance upon the contents of such program.

9. Plaintiff's failure to adequately seek and obtain similar or comparable employment after his discharge by Defendant was a failure to properly mitigate his damages.

10. A reservist claiming rights under Section 459(g) (4) of the Selective Service Act, whose employment performance did not meet the standards of his employer and who intentionally falsified his application for employment with his employer, is not entitled to reinstatement to his position of employment.

Let judgment be entered accordingly.

## JUDGMENT

This action came on for trial before the court, Honorable A. Andrew Hauk, District Judge, Presiding, and the issues having been duly tried, a decision having been duly rendered in accordance with the Decision, Findings of Fact, and Conclusions of Law filed herein,

It is ordered and adjudged,

1. The Plaintiff's claim for reemployment is denied.

2. The Plaintiff shall recover of the Defendant the sum of $2,250.00.

3. Each party to this action shall bear his own fees and court costs incurred in conjunction with this action.